# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| ELECTROLYSIS PREVENTION SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | 3:21-cv-00171-RJC-WCM |
| v. | ) ) | |
| DAIMLER TRUCK NORTH AMERICA LLC, | ) ) ) | |
| Defendant. | ) | |

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

| | | |
|---|---|---|
| LIT-US CHISUM 22-B LLC, | ) ) | |
| Petitioner, | ) ) | 3:23-mc-00042-RJC-WCM |
| v. | ) ) ) | |
| DAIMLER TRUCK NORTH AMERICA LLC, | ) ) ) | |
| Respondent | ) | |

## ORDER

This matter is before the Court on:

1. Defendant Daimler Truck of North America LLC's Motion to Compel Discovery from Electrolysis Prevention Solutions LLC (the "Motion to Compel," Doc. 100), filed in Case Number 3:21-cv-00171-RJC-WCM (the "Civil Action"); and

1

2. Non-Party Lit-US Chisum 22-B LLC's Motion to Quash Subpoenas and Motion to Transfer Motion to Quash to the United States District Court for the Western District of North Carolina (the "Motion to Quash," Doc. 1) filed in Case Number 3:23-mc-00042-RJC-WCM (the "Miscellaneous Action").

The motions are fully briefed, and a hearing was conducted on May 25, 2023, following which the undersigned took the motions under advisement. This Order now follows.

## I. Relevant Background

On April 19, 2021, Plaintiff Electrolysis Prevention Solutions, LLC ("EPS") filed its Complaint for Patent Infringement, alleging infringement of U.S. Patent No. RE47,494 (the "'494 Patent") by Defendant Daimler Trucks North America LLC ("DTNA"). Civil Action, Doc. 1. The Complaint alleges that Frank Amido Catalano ("Catalano") is the named inventor and owner of the '494 Patent, and that EPS is the exclusive licensee of the Patent "with all substantial rights to the '494 Patent including the exclusive right to enforce, sue, and recover damages for past and future infringements." Id. at ¶¶ 10, 20.[1]

In September of 2022, EPS entered into a litigation financing

---

[1] Catalano and EPS entered an Exclusive License Agreement on March 8, 2021. Doc. 102-4. David White ("White") signed the Exclusive License Agreement on behalf of EPS.

arrangement (the "Financing Arrangement") with Lit-US Chisum 22-B LLC ("Chisum").

On February 3, 2023, EPS responded to certain written discovery requests propounded by DTNA. <u>See</u> Miscellaneous Action, Doc. 3. EPS's responses referenced the Financing Arrangement. <u>Id</u>. at Doc. 3 at 86 ("EPS entered into a financing transaction in September 2022, a portion of which included granting a security interest in the '494 Patent to LIT-US CHISUM 22-B LLC").

On February 9, 2023, DTNA served a subpoena for documents and a deposition subpoena on Chisum. Miscellaneous Action, Doc. 3 at 7-33 (the "Chisum Subpoenas").

On February 15, 2023, DTNA sought, through additional discovery requests to EPS, more information regarding Chisum and the Financing Arrangement. Pursuant to an agreement between the parties, EPS responded to those discovery requests on March 20, 2023, three days after the deadline to complete fact discovery. <u>See</u> Docs. 103-10, Doc. 62; <u>see also</u> Docs. 103-16, 103-17. EPS's discovery responses stated that EPS, Catalano, and White each have a financial interest in this litigation, and that the Financing Arrangement granted Chisum:

> certain interests in this Litigation. In addition, as part
> of that transaction, LIT-US CHISUM 22-B LLC
> obtained a security interest in the '494 Patent which

3

> was recorded with the U.S. Patent and Trademark Office. Otherwise, the terms of that transaction are not relevant to any claim or defense at issue in this case.

> Doc. 103-16 at 28.

Additionally, EPS asserted that:

> EPS holds all substantial rights in and to the Asserted Patent. EPS is the exclusive licensee of the Asserted Patent and therefore has standing to assert the Asserted Patents against Defendant.

> Doc. 103-16 at 32.

On February 20, 2023, Chisum filed the Motion to Quash in the United States District Court for the District of Delaware. Miscellaneous Action, Doc. 1. Subsequently, the Motion was transferred to this district. See Miscellaneous Action, Doc. 16.

On March 1, 2023, White gave a deposition in which he testified that he was the sole owner of EPS when EPS was formed, and that he subsequently transferred his ownership interest in EPS to Catalano. Civil Action, Doc. 102-1 at 18-44.

On March 15, 2023, Catalano gave a deposition in which he testified that he was currently the sole owner of EPS, and that Chisum did not own either the '494 Patent or EPS. Doc. 111-2 at 8 & 10-11.

On March 22, 2023, DTNA filed the Motion to Compel. Civil Action, Doc. 100.

Through both the Chisum Subpoenas and the Motion to Compel, DTNA seeks information regarding the Financing Arrangement. Specifically, the Motion to Compel seeks an Order (1) compelling EPS to respond to certain Requests for Production, supplement its responses to other Requests for Production, and designate a witness to testify on topics related to the relationship and interests of Chisum and EPS, and (2) allowing DTNA to reopen the depositions of Catalano and White. Likewise, the Chisum Subpoenas seek information regarding the effect of the Financing Arrangement on the ownership of the '494 Patent and the relationship between Chisum and EPS. The parties agree that the Motion to Compel and the Motion to Quash raise essentially the same legal issues, and during the May 25 hearing, did not object to the two Motions being heard simultaneously.[2]

## II.    Legal Standards

### A. Motions to Compel

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This determination is to be made "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

---

[2] Counsel for EPS also serves as counsel for Chisum.

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Oppenheimer v. Episcopal Communicators, Inc., No. 1:19-CV-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020) (quoting Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C. 2010)).

A district court has broad discretion in managing discovery, Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995), including the "discretion to determine whether discovery is relevant to a party's claim or defense." Serum Source Int'l, Inc. v. GE Healthcare Bio-Sciences Corp., No. 3:16CV471, 2017 WL 915132, at *1 (W.D.N.C. Mar. 8, 2017) (citing Watson v. Lowcountry Red Cross, 974 F.2d 482, 489 (4th Cir. 1992)).

### B. Motions to Quash

Federal Rule of Civil Procedure 45(d) provides that a district court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "A subpoena subjects a nonparty to undue burden if it 'seeks information irrelevant to the case or that would require [the] non-party to incur excessive expenditure of time or money.'" Gilmore v. Jones, 339 F.R.D. 111, 120 (W.D. Va. 2021) (quoting Cook v. Howard, 484 Fed. Appx 805, 812 n.7

(4th Cir. 2012)). "Courts also consider the general discovery standards in Rule 26 when determining whether to quash or modify a subpoena directed to a nonparty." Id. (citing Cook, 484 F.R.D. at 812).

## III.  Analysis[3]

DTNA asserts that information regarding the Financing Arrangement and Chisum's interest in this litigation is relevant to issues of standing, damages, and witness credibility, and to counter a potential "David vs. Goliath" trial theme.

In response, EPS argues that DTNA has already been provided with documents reflecting EPS's interests, and that there are no communications regarding the value of the '494 Patent. EPS additionally asserts that its documents and communications with Chisum are irrelevant and are protected by the work product doctrine and/or a common interest privilege.

Similarly, Chisum argues that the Chisum Subpoenas, to the extent they seek documents and testimony concerning the Financing Arrangement, request information that is irrelevant and that is protected by the work product

---

[3] EPS does not contend that the Motion to Compel is untimely. During the May 25 hearing, DTNA explained that the parties had agreed that EPS could serve its discovery responses after the close of court-enforceable discovery, and that EPS would not object to the Motion to Compel based on timeliness grounds. While the preferred – and generally required – practice in this district is for discovery-related motions to be filed prior to the close of the court-enforceable discovery period, in light of the particular circumstances presented here the undersigned has considered the merits of the Motion to Compel.

doctrine and/or a common interest privilege. Additionally, Chisum asserts that, to the extent the Chisum Subpoenas seek information and documents related to Chisum's business, such information and documents are irrelevant. Finally, Chisum argues that because the Chisum Subpoenas seek information and documents that are in the possession of EPS, requiring Chisum to respond to the Chisum Subpoenas (rather than requiring EPS to respond to DTNA's discovery requests) would impose an undue burden on Chisum.

### A. Standing and Ownership of the '494 Patent

To have standing to assert a patent infringement claim, a plaintiff must have "all legal rights to the patent as the patentee or assignee of all patent rights—the entire bundle of sticks." Morrow v. Microsoft Corp., 499 F.3d 1332, 1339-40 (Fed. Cir. 2007); Prima Tek II, LLC v. A-Roo Co., 222 F.3d 1372, 1378 (Fed. Cir. 2000) (stating that when "the patentee makes an assignment of all substantial rights under the patent, the assignee may be deemed the effective 'patentee' under 35 U.S.C. § 281 and thus may have standing to maintain an infringement suit in its own name").

Here, counsel for EPS has submitted a sworn declaration stating that:

> U.S. Reissue Patent No. RE47,494 (the "Patent-in-Suit") is owned by Mr. Frank Amidio Catalano (aka Frank Amidio Petrosino), the named inventor of the Patent-in-Suit. The fact is confirmed by § 1.1 of the Exclusive License Agreement itself (ECF 102-4). While EPS entered into a financing transaction with Lit-US Chisum 22-B LLC in September 2022, the

8

ownership of the Patent-in-Suit did not change as a result of any aspect of that transaction.

EPS has at all times had control over this case. Chisum has no ownership interest in the Patent-in-Suit and is not a party to this case. Chisum's approval is not necessary for any litigation or settlement decision in this case, nor does Chisum have authority to make litigation or settlement decisions.

Doc. 111-1 at 2.

Additionally, EPS has represented in its discovery responses that it "holds all substantial rights in and to the Asserted Patent" and that it is the "exclusive licensee of the Asserted Patent." <u>See</u> Doc. 103-16 at 32.

However, these interrogatory responses were not verified by EPS as required by Federal Rule of Civil Procedure 33(b)(3) & (5) (stating that each interrogatory is to be answered "in writing under oath" and that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections"). Further, EPS's statement in its discovery responses that Chisum has "certain interests" in this litigation makes its assertion that EPS holds "all substantial rights" in the '494 Patent somewhat ambiguous.

Under these circumstances, the undersigned is not persuaded that broad discovery related to the Financing Arrangement for purposes of exploring issues regarding EPS's ownership of the '494 Patent is proportional to the needs of the case. <u>See</u> Fed. R. Civ. P. 26(b)(1). However, EPS will be ordered to provide a verified supplemental interrogatory response regarding the

9

ownership of the '494 Patent. See MLC Intellectual Property, LLC v. Micron Technology, Inc., No. 14-cv-03657-SI, 2019 WL 118595, at *1 (N.D. Cal. Jan. 7, 2019); see also Colibri Heart Valve LLC v. Medtronic Corevalve LLC, No. 8:20-cv-00847-DOC, 2021 WL 10425630, at *3 (C.D. Cal. March 26, 2021) (denying motion to compel litigation funding information where defendant argued such information was relevant "because there [was] some unknown chance that Plaintiff lack[ed] standing" and explaining that plaintiff had already admitted under oath that it had "all rights, titles, and interests in the asserted patents but for a security interest held by the litigation funder…").

### B. Damages and the Value of the '494 Patent

#### 1. Relevancy

In patent cases, damages are intended to compensate a patentee adequately for infringement. 35 U.S.C. § 284. When a patentee is unable to prove lost profits as a result of the infringement, courts have used a "reasonable royalty" calculation, which may, in some circumstances, be based on a "hypothetical negotiation" between the patentee and infringer. See 35 U.S.C. § 284; Domestic Fabrics Corp. v. Sears, Roebuck & Co., 325 F.Supp.2d 612, 618 (E.D.N.C. 2003) ("The reasonable royalty calculation is used when the patentee is unable to prove lost profits. If the record is devoid of evidence fixing the 'established royalty' in the field, then the fact finder may determine the reasonable royalty based on 'hypothetical negotiations' between the patentee

and infringer") (citing <u>Mahurkar v. C.R. Bard, Inc.</u>, 79 F.3d 1572, 1579 (Fed.Cir.1996)); <u>Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.</u>, No. 2023 WL 3028089, at *15 (S.D. Cal. April 19, 2023) (explaining that the "most common method" for determining a reasonable royalty is a hypothetical negotiation approach, "which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began'") (citations omitted).

Here, DTNA argues that information regarding the Financing Arrangement may be relevant to the question of the value of the '494 Patent, and that the value of the '494 Patent would, in turn, inform the determination of a reasonable royalty.

In patent cases "'courts have generally ruled that litigation funding agreements and related documents are relevant and discoverable.'" <u>Taction Technology, Inc. v. Apple Inc.</u>, No. 21-cv-00812-TWR-JLB, 2022 WL 18781396, at *5 (S.D. Cal. March 16, 2022) (citations omitted). In that regard, litigation funding agreements and related documents ""can be 'directly relevant' to the 'valuations placed on the...patents prior to the present litigation.'" <u>Id</u>. at *5 (finding that, to the extent litigation funding agreements and related documents contained or reflected valuations of the asserted patents, such documents were relevant) (quoting <u>Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd.</u>, No. 15-cv-01735-H (RBB), 2016 WL 7665898, at *7 (S.D. Cal. Sept.

11

20, 2016)).

Here, the undersigned agrees that statements and analysis regarding the value of the '494 Patent should be discoverable. See Odyssey Wireless, 2016 WL 7665898, at *7; see also Intel Corp. v. Protection Capital LLC, No. 13cv1685 GPC (NLS), 2013 WL 12313348, at *3 (S.D. Cal. Oct. 2, 2013) ("Here, Intel seeks information related to Protection Capital's decision to invest in Parallel and the 3Com patents because such information bears on the value of the patents. Protection Capital responds that the subpoenas are a fishing expedition and do not seek information relevant to the USEI Litigation. But district courts in California generally find discovery into third party investors relevant in patent litigation").

Having determined that these materials are relevant, the undersigned has also considered what materials may be available for production.

### a. Documents Sought from EPS

During the May 25 hearing, counsel for EPS and Chisum represented that there were no communications between those parties about the value of the '494 Patent, stating "they simply don't exist." Counsel further represented that there were no communications between Chisum and anyone else on behalf of EPS, including White and Catalano, regarding the value of the '494 Patent. See also Civil Action, Doc. 111-1 at 3 (stating that, in response to DTNA's request for "[a]ll communications between [Catalano or White] and [Chisum],"

EPS conducted a "reasonable search and has no such communications in its possession, custody, or control, nor do Mr. Catalano and Mr. White have any such communications").

The undersigned will take counsel for EPS and Chisum at his word and will not order these parties to produce documents that do not exist. See e.g., Pentair Water Pool and Spa, Inc. v. Hayward Industries, Inc., No. 5:11–CV–459–D, 2012 WL 6608619, at * 5 (E.D.N.C. Dec. 18, 2012) ("The court will not compel production of documents that do not exist"); Payless Shoesource Worldwide, Inc. v. Target Corp., No. 05–4023, 2008 WL 973118, at *4 (D.Kan. Apr. 8, 2008) ("Fed.R.Civ.P. 34 does not require a party to create responsive documents if they do not exist in the first instance" and "the Court cannot compel a party to produce documents that do not exist") (citation omitted).

### b. Documents Sought from Chisum

The Chisum Subpoenas seek facts and documents related to "any claim for, and calculation of, damages alleged to be a result of DTNA's alleged infringement, including any reasonable royalty or any claim to profits" that would have existed "but for DTNA's alleged infringement." Doc. 3 at 17 (Topic No. 19) & at 32 (Request for Documents No. 17). Additionally, the document subpoena requests "[a]ll Documents Concerning the Patent-in-Suit." Miscellaneous Action, Doc. 3 at 30 (Request for Documents No. 4).

With respect to any information exchanged between Chisum and EPS

regarding the value of the '494 Patent, as noted, counsel for Chisum has stated that such communications do not exist. <u>See</u> Miscellaneous Action, Doc. 32-1 at 3 ("…attorneys at my firm were involved in negotiating EPS's transaction with Chisum. I have confirmed that Mr. Catalano never made any statements to Chisum about the value of the Patent-in-Suit. DTNA also confirmed this during Mr. Catalano's (and EPS's) deposition").

It is not clear, however, whether Chisum created any internal valuations of the '494 Patent. The Motion to Quash is focused on information and documents that are within the possession of EPS, rather than any documents that may be solely in the possession of Chisum. Further, Chisum refused to produce a witness or documents with respect to these topics. <u>See</u> Doc. 3 at 52-53; 66; 77.

Therefore, to the extent Chisum has internal documents that reflect its valuation of '494 Patent, such information should be produced, though the undersigned is not persuaded, on the current record, that Chisum should be required to produce a witness to testify by deposition regarding this topic.

## 2. The Work Product Doctrine or a Common Interest Privilege

Chisum asserts that its internal documents are protected by the work

product doctrine.[4] Counsel for Chisum agreed during the May 25 hearing that Chisum bore the burden of establishing that the work product doctrine applies. See Ellis v. Arrowood Indem. Co., No. 2014 WL 4365273, at * 6 (S.D. W. Va. Sept. 2, 2014) ("The party seeking work product protection has the burden of showing that it applies") (citing, among other cases, Malibu Media, LLC v. John Does 1–15, No. CIV.A. 12–2077, 2012 WL 3089383, at *5 (E.D.Pa. July 30, 2012) ("The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied."); Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421, 424 (E.D.N.Y.2007) ("The burden of persuasion in a motion to quash a subpoena ... is borne by the movant") (quotation and citations omitted)).

To make a sufficient showing, a movant, "may not rely on conclusory allegations or mere statements in briefs" and instead must provide a "specific demonstration of facts supporting the requested protection. Such demonstration should preferably be made through affidavits from knowledgeable persons. Failure to so satisfy this burden, even though affidavits have been submitted, will lead to denial of the motion." Suggs v.

---

[4] EPS appears to concede that there was no common interest privilege between Chisum and EPS prior to execution of the Financing Arrangement. Further, it is not necessary to reach the question of whether a common interest privilege protects documents and communications between Chisum and EPS regarding the value of the '494 Patent because, as discussed above, EPS and Chisum have represented that no such documents or communications exist.

<u>Whitaker</u>, 152 F.R.D. 501, 505 (M.D.N.C. 1993).

Here, Chisum asserts, in a general fashion, that the Chisum Subpoenas seek information to which "courts have routinely held that work product and/or common interest privilege applies…." Miscellaneous Action, Doc. 2 at 18; <u>see also id</u>. at 12. However, Chisum has not provided any details regarding the specific documents to which it claims these protections apply and has not provided a privilege log describing the nature of any withheld documents. <u>See</u> Fed.R.Civ.P. 45(e)(2)(A)(ii).

Under these circumstances, the undersigned finds that Chisum has not carried its burden of establishing that its internal documents that analyze the value of the '494 Patent, to the extent those documents exist, are protected by the work product doctrine.

### C. Witness Credibility

With respect to witness credibility, DTNA contends that "[d]iscovery into the communications between EPS and/or Mr. Catalano and Chisum…may weigh on the credibility of testimony given by" EPS and/or Catalano.[5] Specifically, DTNA asserts that it would like to explore potential discrepancies between Catalano's deposition testimony and any statements he may have made regarding the value of the patent in other settings. <u>See</u> Civil Action, Doc.

---

[5] DTNA explains that Catalano was designated as the sole witness to testify on behalf of EPS.

16

102 at 19 ("[w]hile not under oath, Mr. Catalano or EPS undoubtedly made representations to Chisum regarding the value of the Asserted Patent"). However, EPS has represented that there were no communications about the value of the '494 Patent between Catalano and Chisum.

Additionally, DTNA argues that because Chisum has been granted "some undisclosed 'Collateral,'" by EPS and/or Catalano, the jury should be able to hear what Catalano "has to lose" when it evaluates his credibility. Id. at 20. In response, EPS's counsel has stated in a sworn declaration that the term "collateral" as set forth in the security agreement recorded by Chisum "does not include any of Mr. Catalano's personal property or business as collateral." Civil Action, Doc. 111-1 at 3.

The undersigned is not persuaded, on the current record, that information beyond valuations of the '494 Patent, discussed above, must be provided.

### D. Trial Themes

DTNA asserts that it expects EPS will present the "narrative of a supposed lone inventor fighting against a large defendant," when in reality, EPS is "backed by a sophisticated, well-financed litigation finance company." Civil Action, Doc. 102 at 20.

Courts have reached different conclusions as to whether information regarding litigation funding may be discovered in order to rebut potential trial

themes. Compare Continental Circuits LLC v. Intel Corp., 435 F.Supp.3d 1014, 1019 (D. Az. 2020) ("…the requested documents and information are relevant. They concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial. Plaintiff claims that any such narrative is speculative, but Defendants are entitled to conduct discovery that may refute potential trial themes, and Defendants note that at least some evidence suggests that such a narrative will be asserted in this case.") with GoTV Streaming, LLC v. Netflix, Inc., No. 2:22-cv-07556-RGK-SHK, 2023 WL 4237609, at *13 (C.D. Cal. May 24, 2023) (rejecting defendant's argument that information related to litigation funding was relevant to refuting a David vs. Goliath trial theme as speculative, and stating that "now that [defendant] has the name of the funder, it has the necessary information to refute any such argument…").

Here, as noted above, EPS has acknowledged the existence of the Financing Arrangement, as well as Chisum's security interest in the '494 Patent. See Miscellaneous Action, Doc. 3 at 86; Civil Action, Doc. 103-16. It therefore appears that DTNA already has some information that could be pertinent to trial themes.[6]

---

[6] Additionally, DTNA has submitted documents reflecting cases involving various "Chisum" entities (Doc. 103-7) as well as various properties assigned to "LIT-US" entities (including Chisum) as recorded at the United States Patent & Trademark

On the other hand, EPS argues that DTNA's "insinuations that Chisum is 'likely controlling' this and other litigations" and that EPS is "backed by sophisticated financiers" are "completely unfounded." <u>See</u> Doc. 11 at 7-8.

The undersigned believes that some limited discovery regarding the funding of this litigation is appropriate, particularly since the production of such information and documents can be made pursuant to the terms of an existing Protective Order that allows documents to be designated as "Confidential" or "Highly Confidential – Outside Attorneys' Eyes Only." Doc. 30.[7] The undersigned is not persuaded, however, that broader discovery regarding the relationship between Chisum and other similarly named entities or Chisum's other business interests would be proportional to the needs of this case.

Finally, the undersigned emphasizes that these rulings pertain only to the issue of pretrial discovery; all determinations regarding the admissibility of information and documents at trial is a matter reserved to the discretion of the District Judge.

---

Office (Doc. 103-9) and other recorded security interests by Chisum in other patents (Doc. 103-6).

[7] For the same reasons discussed above with respect to Chisum's documents, the undersigned finds that EPS has not met its burden of establishing that the documents it will be ordered to produce are protected by the work product doctrine.

19

**IT IS THEREFORE ORDERED** that:

1. Defendant Daimler Truck of North America LLC's Motion to Compel Discovery from Electrolysis Prevention Solutions LLC (Doc. 100), filed in Case Number 3:21-cv-00171-RJC-WCM is **GRANTED IN PART**.

   A. On or before **July 31, 2023**, EPS shall serve a verified supplemental response to Interrogatory No. 13 (Doc. 103-16) regarding the ownership of the '494 Patent.

   B. On or before **July 31, 2023**, EPS shall provide documents in response to Request for Production No. 48 and 54 (Doc. 103-10).

   C. In all other respects, the Motion to Compel is **DENIED**.

2. Non-Party Lit-US Chisum 22-B LLC's Motion to Quash Subpoenas and Motion to Transfer Motion to Quash to the United States District Court for the Western District of North Carolina (Doc. 1) filed in Case Number. 3:23-mc-00042-RJC-WCM is **DENIED IN PART**.

   A. On or before **July 31, 2023**, Chisum **SHALL RESPOND** to Request for Documents No. 4 and Request for Documents No. 17 set out in the Chisum Document Subpoena to the extent it has documents that reflect a statement of the value of the '494 Patent.

   B. In all other respects, the Motion to Quash is **GRANTED**.

3. Any documents or information produced in response to this Order may be provided subject to the existing Protective Order, if necessary.

Signed: July 24, 2023

W. Carleton Metcalf
United States Magistrate Judge